## THE GANOGA.

### (District Court, S. D. New York. May 12, 1904.)

1. TOWAGE—LIABILITY OF TUG FOR SINKING OF TOW—NEGLIGENT MAKING UP OF TOW.

   A tug crossing from Jersey City to East river, during a strong breeze from the southeast, with a tow consisting of six scows and canal boats on hawsers, arranged in two tiers, *held* liable for the loss of a canal boat laden with coal, which was in the center of the front tier, on the ground of negligence, in view of the condition of the sea, in so making up the tow as to subject the canal boat to being filled by water thrown on her open decks by a light scow on her starboard and rear, which also struck and injured her; and also for not landing the canal boat, on request of her master, when the danger became apparent.

In Admiralty. Suits against tug for loss of tow and cargo.

Wilcox & Green, for libellants.
Robinson, Biddle & Ward and W. S. Montgomery, for claimant.

ADAMS, District Judge. The first of the above entitled actions was brought by Thomas Herbert, owner of the canal boat John T. Hawkes, to recover for her loss through alleged negligent towing, on hawsers, by the steamtug Ganoga, belonging to the Easton & Amboy Railroad Company, on the 22nd day of July, 1903. The boat sank off the Staten Island ferry slip, at the foot of Whitehall Street, New York. John Tracy, the master of the boat was also a libellant in the first action to recover the value of his personal effects, alleged to have been lost at the time. The second action was brought by the owners of the cargo of coal to recover for its loss.

The Hawkes was one of six boats composing the tow, which was made up at the Packer Dock, foot of Morris Street, Jersey City, and bound for points in the East River. The boats were two large scows, a box and three canal boats, all loaded excepting one of the scows. They were arranged in two tiers of three boats each, the Hawkes being the middle boat of the hawser tier. The box, about 60 feet long, was on her starboard side and one of the scows on her port side. There was a light scow, about 12 feet out of the water, on the starboard side of the other tier, which lapped the starboard quarter of the Hawkes.

There were two hawsers from the tug, running from her stern bitts to the outside boats of the first tier, the scow Derringer and the box Curtis. The light scow, astern of the box, was called the Marion. She was partly made fast to the Hawkes.

At the time of starting between 1 and 2 o'clock, there was a southeast breeze blowing at the rate of from 21 to 25 miles an hour. The tow proceeded across the river, turning up somewhat towards Liberty Street on the New York side, and then turned to go around the Battery. The tide was ebb and the river was quite rough from the effect of the wind. Water was taken in by the Hawkes and when the tow got opposite the ferry slip, she sank and became a total loss, with her cargo and the captain's effects.

The libellants allege negligence:

"1. In making up said tow improperly by placing the Hawkes in the first tier; also, in that the space between the box and the scow hereinbefore mentioned permitted the wash of said boats to enter the 'Hawkes', also, in that the said scow was permitted to strike and bump against the 'Hawkes.'

2. In starting out with her tow in the face of the weather conditions then prevailing, when it was apparent that the safety of her tow would be endangered.

3. In keeping on when it was apparent that she was thereby endangering the safety of her tow.

4. In not landing the said canal boat as the master requested and prudence required after it began to fill."

The claimant denies any negligence and alleges that the accident was due to the age and unseaworthy condition of the boat.

The testimony sustains the libellants' charges, but there is nothing to establish the defense, beyond the fact that the Hawkes was quite an old boat. She was, however, in a fair condition, with about 20 inches of freeboard amidships and free from water when she started. It is probable that she would have escaped loss, as did the other boats, if it had not been for her position in the tow, which subjected her to being filled with water thrown into her open deck by the Marion, which also broke her fenders and injured her somewhat by contact. A plank was started and some water thus admitted into the hold. There was an open space of about 25 feet on the Hawkes' starboard side between the stern of the Curtis and the bow of the Marion, and when the latter pounded in the sea, she threw the water into the Hawkes, which was about 25 tons short of a full cargo of coal and she must have taken in more than that much water. In the two ways, the greater portion doubtless by the latter, she took in enough water to cause the sinking.

I do not find that the Hawkes participated in the negligence in any way. The master protested against the towing under the circumstances and the manner of making up the tow. He did all the pumping he could and requested that his boat be taken out of the tow, but was overruled by the master of the tug in all respects.

Decrees for the libellants, with orders of reference.